## COMMONWEALTH vs. ELIAS M. TURNER.

Where A. and B. were jointly indicted for kidnapping a colored boy at W., on tne 12th of September, evidence was held admissible against B. to show that he, on the 11th of September, at S., where he went with A., endeavored to obtain a colored boy saying that he wished to procure one to live in his father's family. And when, after this evidence was admitted, B. called his father and mother as witresses, and they testified that she directed him, before he went with A. to S., to endeav‿r to obtain there a girl or boy to live with her, and B. then called as a witness the daughter of the man at whose house A. and B. stopped while they were at S., and she testified that B., while he was at S., conversed with her father on the subject of procuring a boy for his mother; it was held that this witness might be asked, on cross-examination by the attorney for the Commonwealth, if she did not know that her father stood indicted for kidnapping another boy, on account of his participating in the transaction of which she had been testifying.

THE defendant and Dickinson Shearer were jointly indicted for kidnapping a colored boy of the age of eight years. The first count in the indictment alleged that said Shearer and Tur ner, on the 12th of September 1839, " at Worcester in the county of Worcester, unlawfully, fraudulently and wickedly, and without any lawful warrant or authority whatever, did take, obtain, and inveigle into their custody and possession, one Sidney O. Francis of said Worcester, a minor child under the age of twenty one years, and son of John F. Francis of said Worcester, a free citizen of said Commonwealth, with intent to transport and send, and to cause to be transported and sent, the body and person of him the said Sidney O. Francis from and out of said Commonwealth, without the consent and against the will of the said Sidney and of his father, the said Francis ; against the peace of the said Commonwealth, and contrary to the form of the statute in such case made and provided."

The second count alleged, " that the said Shearer and Turner, at Worcester aforesaid, in the county aforesaid, on the said twelfth day of September, unlawfully, fraudulently and wickedly, and without any lawful warrant or authority whatever, did seize, take, steal and kidnap one Sidney O. Francis of said Worcester, the minor child and son of John F. Francis of said Worcester, a free citizen of said Commonwealth, with intent the said Sidney O. Francis to send and transport, and to ca ise

and procure the said Sidney O. Francis to be sent and trans-
ported from and out of said Commonwealth, without the consent
of said Sidney O. Francis, and against his will, and against the
will and without the consent of said John F. Francis, the said
father of said Sidney, and with intent also, against the wil of
said Sidney and of his said father, the said Francis, to sell and
transfer the said Sidney O. Francis as a slave ; against the
peace of the said Commonwealth, and contrary to the form of
the statute in such case made and provided."

Both defendants were found guilty by the jury, on a trial in
the court of common pleas. Turner brought the case into this
court on exceptions, the grounds of which appear in the follow-
ing report signed by *Cummins*, J. before whom the trial was
had:

There was evidence, in behalf of the Commonwealth, on the
trial, tending to prove that the two defendants went together,
in September 1839, from Palmer (where Turner, who is a
minor, resided in his father's family) to Shirley, in the county
of Middlesex, to the house of one William Little, a relative of
both the defendants, and that on their return to Palmer, they
stopped at Worcester and obtained possession of Sidney. There
was also evidence tending to show that the father of Sidney
was induced to commit him to Shearer, to live with him as a
servant, through the false representations of both the defendants.
Those representations, among other things, were, that said
Shearer was a resident of the town of Palmer, and had resided
there for several years, and had been and still was engaged in
the business of trade, keeping a store there, and that the boy,
Sidney, was wanted by Shearer to assist him in that store. The
boy was taken by Shearer, and after being carried in a wagon
to Palmer, with Shearer and Turner, was immediately afterwards
transported by Shearer to the State of Virginia, where he (Shear-
er) resided ; but there was no proof that Turner had any interest
in the abduction. The boy was carried to the State of Vir-
ginia without any consent of his, or of his parents, and without
the knowledge of either that he was in fact going without the
limits of this Commonwealth.

For the purpose of still further showing the connexion of Turner with said Shearer, in the kidnapping of the boy, evidence was offered, tending to prove that said Turner was a nephew of Shearer; that Shearer had not resided at Palmer for the last ten or twelve years; that Turner knew that Shearer resided in Virginia; that he was an owner of slaves, and that he was engaged there in the business of buying and selling slaves; and that shortly before the boy was obtained by Shearer, as aforesaid, Turner expressed his belief, that Shearer would not hesitate, if he could get free colored persons from Massachusetts into Virginia, to sell them there as slaves.

For the same purpose, and to show the intent of Turner, evidence was offered on behalf of the Commonwealth, to prove that in the morning of the same day on which Shearer, as before mentioned, obtained possession of the boy, and not more than one hour before, Turner, being in company with Shearer, inquired of one John Metcalf, with whom he was acquainted, where they could procure a colored boy; said Turner representing that such a boy was wanted for his father; which last representation, it was insisted on the part of the Commonwealth, was false, and that said Turner had no directions or authority to procure such boy for his father's service.

None of this evidence was objected to by the defendant, Turner. After the preceding evidence was introduced, the District Attorney, for the like purpose of proving the said connexion of Turner and Shearer, and of showing the intent of Turner, offered evidence to prove, that Turner, the day before Shearer obtained the boy Sidney, as aforesaid, while at Shirley, went with said Little to one of the overseers of the poor, (Shearer not going with them, but remaining at the house of Little), and endeavored to procure a colored boy there in the almshouse, upon a representation that the boy was wanted by his father to live with him in Palmer. This representation the District Attorney insisted was false and collusive, and he stated that he intended to offer further evidence to prove it to be so To the offered evidence of what took place in Shirley, the

defendant, Turner, objected, but the objection was overruled, and the evidence was admitted for the purpose aforesaid.

The defendant, Turner, called his father and mother to prove that he was directed by his father to go to Shirley for the purpose of carrying Shearer, who was his uncle, and was directed by his mother to endeavor to obtain a girl or boy at Shirley, to live with her at Palmer, as a servant. He also called Jane Little, a daughter of William Little, to prove that while at Shirley he had a conversation with said Little on the subject.

The District Attorney commenced his cross-examination by asking Jane Little, if her father did not, to her knowledge, now stand indicted for kidnapping another boy, on account of his participation in the very same transaction of which she had been testifying. To this inquiry the defendant objected, but the court overruled the objection, and the question was put. The witness answered that her father was not thus indicted, to her knowledge.

The counsel for the defendant contended that no offence was sufficiently described in the first count in the indictment ; but the court overruled this objection. The counsel for the defendant further contended, that the jury must acquit the defendant on the second count in the indictment, unless they were satisfied, that the defendant intended to sell the boy, alleged to have been kidnapped, at the time when he kidnapped him. But the court instructed the jury, that the second count in the indictment described a substantive offence, independently of any such intention, and that, if they were satisfied that all the other allegations contained in that count were proved, and that it was not proved that he, when he kidnapped the boy, intended to sell him, they would return a verdict against the defendant, negativing such intention ; but that, if they were satisfied that all the allegations in that count were proved, and that the defendant, when he kidnapped the boy, intended to sell him, they would return a general verdict against the defendant on that count.

The jury returned a general verdict against the defendant upon both counts in the indictment

To the foregoing ruling and decisions of the court, the de fendant alleged exceptions.

*Barton & R. A. Chapman*, for the defendant. The testimony as to the defendant's endeavoring to procure a colored boy at Shirley ought not to have been received. That was no part of the *res gesta*. It was at a different time and place, when Sherrer was not present, and should be regarded as an entirely different transaction from that which is charged in the indictment. 1 Phil. Ev. (4th Amer. ed.) 178. 181. *The King* v. *Ellis*, 6 Barn. & Cres. 145. *Rex* v. *Winkworth*, 4 Car. & P. 444.

No evidence was given that the defendant's declarations at Shirley were collusive. On the contrary, the testimony of his parents showed that it was not collusive. Yet those declarations were offered on the ground that they were to be shown to be groundless and false pretences ; and they operated injuriously to the defendant.

The cross interrogatory to Jane Little should not have been put, nor should she have been required to answer it. Whatever might have been her answer, it could have had no tendency to discredit her as a witness, or to prove the guilt of the defendant. 1 Stark. Ev. 133. 1 Phil. Ev. (4th Amer. ed.) 272. *Spenceley* v. *De Willott*, 7 East, 108. *Odiorne* v. *Winkley*, 2 Gallis. 51. *Evans* v. *Eaton*, Peters C. C. 322. *Elton* v. *Larkins*, 5 Car. & P. 385. *The People* v. *Genung*, 11 Wend. 18.

*Merrick*, (District Attorney,) for the Commonwealth.

D E W E Y, J. The general rule, as to the admission of testimony in criminal cases, is undoubtedly as contended for by the counsel for the defendant ; that the evidence must be strictly confined to the point in issue, and that it is not competent to prove the commission of another distinct offence, for the purpose of leaving the jury to infer from his participation in such other act, that the defendant is also guilty of the particular offence for which he is put on trial. But cases often occur which, to some extent at least, may be considered exceptions to the general rule, and where it becomes proper and necessary to inquire into and hear testimony as to other acts of the defendant which, though constituting in themselves distinct and independent crimes,

yet disclose evidence having a material bearing upon the partic·ular charge upon which he is arraigned. Evidence of this character is admitted with great latitude in trials for conspiracy, in which independent acts are introduced for the purpose of establishing the combination and its unlawful character. It is always competent to resort to evidence of other transactions by the defendant, whenever it is necessary to establish the guilty knowledge of the party. Thus in the case of one indicted for uttering and passing counterfeit bank bills or coins, knowing them to be such, it would be competent for the prosecutor to show that the defendant had, on another occasion, uttered and passed similar counterfeit bills or coins. This is very familiar law, both as found in the books, and recognized in practice. Roscoe Crim. Ev (2d ed.) 83 – 86. In *The King* v. *Whiley & Haines*, 2 Leach, (4th ed.) 893, the defendants were indicted for uttering certain bank notes, knowing them to be forged ; and the prosecutor was allowed, for the purpose of establishing the fact that the defendants knew the character of the notes, to show that on three former occasions they had passed forged bank notes to different persons, and that on each occasion they gave a different name and place of residence, in answer to inquiries made of them. It was said in that case, by the court, that it was competent to give in evidence the demeanor of a defendant on other occasions, from which it might be inferred that he was acting with a guilty purpose while he was uttering the forged notes, as charged upon him in the indictment upon which he was on trial. *S. C.* 1 New Rep. 92.

Evidence of other facts than those connected immediately with the act charged are always admissible, where the *intent* of the defendant forms a material part of the issue, and where those facts can be supposed to have any proper tendency to establish that intent. Roscoe Crim. Ev. (2d ed.) 87. [See also Greenleaf on Ev. § 53.]

Upon recurring to the indictment, and the proceedings had thereon upon the trial, it will be seen that the intent with which the defendant did the act complained of became material, and was in fact a question directly submitted to the jury to pass upon.

The intent and purpose of the defendant, in obtaining the possession and custody of the individual alleged to be unlawfully taken, were to be inferred from a great variety of circumstances, and necessarily opened a wide door for the introduction of evidence of the acts of the party accused, having any reasonable degree of connexion with the particular act complained of. It was with the view of fixing the character of this last act, that evidence was received of the conduct and declarations of the defendant on the day previous, and at another place, and in reference to another individual, about whom overtures were made, with a view of obtaining possession of his person. With reference to such purpose, and thus limited, it seems to us to have been properly admitted.

A further objection relied on by the defendant is, that the presiding judge permitted an improper inquiry to be put to Jane Little, a witness introduced in the defence, in the question asked her on her cross-examination, whether her father was not, within her knowledge, indicted for kidnapping another boy, on account of his participation in the same transaction of which she had been testifying.

It may be remarked, that the objection here taken does not raise the question, whether it be competent for counsel, on cross-examination, to put a question to a witness, which, if answered in the affirmative, would disgrace him, or show him to be guilty of an infamous crime. In practice, such questions have often been allowed to be propounded to a witness, though the propriety of it has been sometimes doubted, upon the ground, that it could not be proper to allow a question to be *put* to a witness which by law he was not bound to *answer*. But the question put to the witness, in the present case, did not tend to disgrace her, or to show her guilty of any crime. The inquiry related to a third person, and was put to her to show that, from her connexion with such third person, and from her position in relation to a matter connected with the case on trial, and as being charged with a similar offence, she might be under some influence or bias, which might give a coloring to her testimony, and which should, to some extent, affect her credit with the jury. Had

this evidence been offered to establish the fact of the existence of such an indictment, it would have been clearly inadmissible ; but for the purposes for which it was put, the material point was not whether a legal and technical indictment had been found by a grand jury against her father, but whether she was testifying under the belief that such was the fact. In this view, and for this purpose, the inquiry was proper and unobjectionable.

But the objection, if any existed, would seem to have been removed by the negative answer she gave to the question. The question and the accompanying answer leave the matter as favorably for the defendant, as if no such question had been put.

The second count in this indictment being unquestionably good and sufficient, the court have not thought it necessary to consider the question raised as to the sufficiency of the first count. Nor does any question arise as to the ruling of the court, that the second count described a substantive offence, independent of the alleged intention to cause the said Sidney O. Francis to be sent and transported out of the Commonwealth, without his consent and against his will — inasmuch as the jury have found the intent as charged in the indictment ; the judge having directed them to pass upon that matter, and properly so directed the form of their verdict, as in the event of their finding the defendant guilty with the intent charged, this ruling, which was thus objected to, would be no further material, or a subject of exceptions.

*Exceptions overruled*